IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY, L.P., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:14-CV-4124-M-BF |
| JOSEPH TAYLOR III, JULIE M. ROBERTS, TONY E. MIMS, BERNARD MCGHEE, and LATOYA S. TAYLOR, | § § § § § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this civil action to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a Standing Order of Reference. Plaintiffs Sprint Solutions, Inc., and Sprint Communications Company, L.P. (collectively, "Sprint") have filed Plaintiffs' Motion for Default Final Judgment and Permanent Injunction and Awarding Damages Against Defendants Joseph Taylor III, Julie M. Roberts, Tony E. Mims, and Bernard McGhee [D.E. 43]. For the following reasons, the undersigned recommends that the motion be granted in part.

### BACKGROUND

For at least four years, Defendants[1] Joseph Taylor III, Julie M. Roberts, Tony E. Mims, and Bernard McGhee ("McGhee") (collectively, "Defendants") engaged in a scheme to acquire and resell Sprint cellular phones and steal Sprint customer information. Pls.' Mot. Default J. [D.E. 43 at 11-

---

[1] LaToya Taylor was included in the suit as a defendant. *See* Compl. [D.E. 1]. However, Sprint subsequently and voluntarily dismissed the action against LaToya Taylor.*See* Notice of Dismissal [D.E. 60].

1

12]. Defendants called Sprint customer service posing as Sprint supervisors interested in auditing employee performance. *Id.* [D.E. 43 at 11]. During the "audit," Defendants requested from the audited employee all "recent customer call data under the guise of a performance assessment." *Id.* [D.E. 43 at 11]. Defendants then used this information to call Sprint customer service back, now posing as a customer, to "place[] orders for new Sprint iPhones, Sprint Galaxy devices, and Sprint LG handsets, and charge[] the cost of the devices to the legitimate Sprint customer's account." *Id.* [D.E. 43 at 12]. Defendants sold the fraudulently ordered equipment after it was received. *Id.* [D.E. 43 at 12].

Defendants also used the stolen Sprint customer information to acquire customer financial information. *Id.* [D.E. 43 at 12]. They posed as Sprint representatives and used the fraudulently acquired customer information to contact customers to inform them that their recent order "could not be processed or offer[ed] a 'better deal' on equipment." *Id.* [D.E. 43 at 12]. The "Defendants convince[d] the customers to provide their . . . credit/debit card information so that the order may be reprocessed, but then use[d] this fraudulently acquired information to [Defendants'] own benefit by placing fraudulent orders for Sprint phones and services, which [were] billed to the legitimate customer's account." *Id.* [D.E. 43 at 12]. Defendants further used Sprint customer credit and debit card information to withdraw funds from the customer's bank account or make "substantial charges" on the customer's credit card. *Id.* [D.E. 43 at 12]. Sprint alleges that Defendants continue to engage in the above described conduct, even after the filing of this lawsuit. *Id.* [D.E. 43 at 13].

Sprint filed a complaint against Defendants in November 2014. Compl. [D.E. 1]. The complaint alleges that Defendants have engaged in unfair competition, tortiously interfered with business and contract relations, engaged in civil conspiracy, were unjustly enriched, committed

2

common law fraud and fraudulent misrepresentation, trafficked computer passwords, accessed Sprint's computer network without authorization and with intent to defraud, infringed upon Sprint's trademarks, violated the Lanham Act, committed conversion, and injured Sprint's business reputation. *See id.* [D.E. 1 at 21-46]. The Clerk of Court issued summonses that were personally served on all Defendants. Pls.' Mot. Default J. [D.E. 43 at 9]. All of the Defendants failed to answer[2] or in any other way respond to Sprint's Complaint. *Id.* [D.E. 43 at 9]. The United States District Clerk entered default against the Defendants. Entry of Default [D.E. 20, 38]. Sprint now requests that a default judgment and a permanent injunction be entered against the Defendants. Pls.' Mot. Default J. [D.E. 43 at 33].

## DEFAULT JUDGMENT

The Federal Rules of Civil Procedure govern the entry of default judgments. *See* FED. R. CIV. P. 55. Default judgments may be entered against a party that has failed to defend itself in an action and "that failure is shown by affidavit or otherwise . . . ." *Id.* at 55(b)(2). Default judgments can be "entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." *Id.* at 55(b)(2). The court may hold a hearing to: "conduct an accounting," determine damages, "establish the truth of any allegation by evidence," or inquire into a related matter. *Id.* However, "[i]f the amount of the judgment can be reliably computed from the record, and a party is otherwise entitled to default judgment, a default judgment can be entered without a hearing." *TracFone Wireless, Inc. v. Brooks*, 60 F. Supp. 3d 734, 735 (N.D. Tex. 2008) (citing, *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1991)).

---

[2] McGhee appeared *pro se* and filed an answer to Sprint's complaint. However, that answer was stricken because of McGhee's failure to participate, appear, or respond to further proceedings in the case. *See Sprint Solutions, Inc. v Taylor*, No. 3:14-CV-4124-M, 2015 WL 4100059, at *3 (N.D. Tex. July 6, 2015).

The Court finds that because Defendants have not filed an answer or made any type of appearance in this action, and because Defendants are not infants or incompetents, Sprint is entitled to judgment against Defendants. *See TracFone Wireless, Inc.*, 60 F. Supp. 3d at 735. Since "the amount of the judgment can be reliably computed from the record," the Court does not need to hold a hearing on the matter. *See id.*

## PERMANENT INJUNCTION

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* To establish irreparable injury "[a] plaintiff must allege specific facts." *ITT Educ. Servs. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (internal quotations omitted). "[A]n injury is irreparable and there is no adequate remedy at law [if] a multiplicity of suits would be required to gain relief." *Tex. Guaranteed Student Loan Corp. v. Arrangements, Inc.*, No. 3:07-CV-438-BH, 2009 WL 1919553, at *3 (N.D. Tex. July 2, 2009) (internal quotations omitted).

Sprint claims that Defendants' actions caused irreparable injury in several ways. *See eBay*, 547 U.S. at 391. First, Sprint is deprived of the opportunity to recoup its substantial investment in the phones it sells at subsidized rates or to earn profits by providing wireless service to legitimate Sprint consumers on the stolen phones. Compl. [D.E. 1 at 16]. Defendants' actions also make it more difficult for Sprint to migrate its customers to the newer technology through legitimate, timely

upgrades. *Id.* [D.E. 1 at 16]. Further, Sprint claims that this inability to remove old phones from circulation and Defendants' infringement of the Sprint name and its trademarks have caused significant ongoing and irreparable losses to its brand, image, and reputation. *Id.* [D.E. 1 at 16]. Sprint also alleges that Defendants' actions harm Sprint's relationship with its customers. *Id.* [D.E. 1 at 16].

Furthermore, Sprint alleges that Defendants' fraudulent activities have continued even after filing suit against them, and there is no indication that Defendants intend to stop engaging in any of the previously described behaviors. Pls.' Mot. Default J. [D.E. 43 at 5]. Addressing Defendants' continuing fraudulent enterprises would require Sprint to file a multiplicity of suits on a continuing basis to gain relief from Defendants every time they called Sprint customer service to order a phone or attempt to acquire customer information. *See Tex. Guaranteed*, 2009 WL 1919553, at *3. Sprint has also demonstrated that the balance of hardships weighs in its favor, as Sprint has the legal rights to the trademarks, phones, phone network, and customer information–not Defendants. *See* Compl. [D.E. 1 at 16]. Finally, Sprint has shown that the public would not be disserved by a permanent injunction. *See* Pls.' Mot. Default J. [D.E. 43 at 27-28]. In fact, Sprint argues that the public would benefit from the injunction because customer credit scores, bank accounts, and phone accounts would be protected from Defendants. *Id.* [D.E. 43 at 27].

Defendants have not challenged Sprint's entitlement to a permanent injunction, and Sprint has provided compelling evidence that it has satisfied all of the *eBay* factors. *See Mannatech, Inc. v. Glycoproducts Int'l, Inc.*, No. 3:06-CV-0471-BD, 2008 WL 2704425, at *4 (N.D. Tex. July 9, 2008). As such, Sprint is entitled to a permanent injunction. *Id.* Therefore, the Court recommends

that Sprint's motion for a permanent injunction be granted and that the permanent injunction be included in the Judgment entered by the District Court.

## MONETARY DAMAGES

The Lanham Act protects trademark holders from infringement upon those marks by third parties. *See* 15 U.S.C. §§ 1051 et seq. Specifically, it is unlawful for:

> [a]ny person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, [and] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Sprint alleges that Defendants violated the Lanham Act by using Sprint's marks to promote and misrepresent the nature, characteristics, and qualities of the stolen products Defendants sold to third parties. Pls.' Mot. Default J. [D.E. 43 at 15].

"The Lanham Act contains a broad remedial provision, which allows the district court substantial discretion in awarding damages." *Dial One of the Mid-South, Inc. v. Bellsouth Telcoms., Inc.*, 401 F.3d 603, 609 (5th Cir. 2005) (citing 15 U.S.C. § 1117). Under the Lanham Act (the "Act"), plaintiffs are allowed "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). However, the Act does not permit punitive damages, and any award must be equitable. *Dial One*, 401 F.3d at 609.

### Phones

Sprint alleges it was damaged when Defendants fraudulently ordered fifty "smart phones" and three "feature phones." Pls.' Mot. Default J. [D.E. 43 at 29]. Because the orders were fraudulent, Sprint did not receive payment for the phones. *Id.* [D.E. 43 at 29]. Further, Sprint claims it was unable to recoup the subsidy investment in each phone or "earn a profit through payment under

6

Sprint service plans." *Id.* [D.E. 43 at 29]. Sprint anticipates an average revenue of $1,919.00 from each smart phone it sells and an average revenue of $961.00 from each feature phone it sells. *Id.* [D.E. 43 at 29]. Sprint places the lost monetary value on the smart and feature phones at $98,833.00. *Id.* [D.E. 43 at 30].

### Customer Service Calls and Investigation

In their efforts to steal phones and customer information, Defendants called Sprint at least 2,504 times. *Id.* [D.E. 43 at 30]. Each call placed to a Sprint representative cost Sprint at least $4.57. *Id.* [D.E. 43 at 30]. Additionally, fraud investigators at Sprint spent at least $8.67 investigating each of the fifty-three fraudulently ordered phones. *Id.* [D.E. 43 at 30]. That places a total of $11,902.79 in damages to Sprint related to taking Defendants' calls and investigating fraudulent orders for Sprint equipment placed by Defendants. *Id.* [D.E. 43 at 30].

### Treble Damages

The Act empowers courts in assessing damages, to enter a judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). The court is accorded broad discretion in deciding to award damages "up to three times the amount of actual damages found." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997). "Evidence of the defendant's conduct may support an enhancement where the conduct results in an imprecise damage calculation." *Champion Cooler Corp. v. Dial Mfg.*, No. 3:09-CV-1498-D, 2010 WL 1644193, at *3 (N.D. Tex. Apr. 22, 2010). On the other hand, "evidence of willfulness alone, without proof that damages are not completely compensatory, does not entitle a plaintiff to enhanced damages." *Id.*

7

Here, Sprint claims that the damages from the fraudulently ordered phones total $98,833.00 and that the damages incurred by Sprint employees is $11,902.79.00. Pls.' Mot. Default J. [D.E. 43 at 30]. The total amount Sprint claims for damages is $110,735.79. *See id.* [D.E. 43 at 31]. An award of three times the total claimed damages to Sprint would equal $332,207.37. *Id.* [D.E. 43 at 31].

The Court finds that this amount is not inequitable or punitive. *See Dial One*, 401 F.3d at 609. Further, the Court finds that this award is imprecise and fails to do justice because Defendants' conduct is ongoing, and Defendants have refused to participate in the suit; thus preventing a more exact calculation of damages. *See Champion Cooler*, 2010 WL 1644193, at *3. Therefore, the Court recommends that the full $332,207.37 be awarded to Sprint.

### Cost of the Action

Under the Act, a plaintiff is able to recover the "the costs of the action" 15 U.S.C. § 1117(a). Here, Sprint presents a declaration outlining the costs of investigating Defendants in connection with this action. *See* Decl. of Stuart Drobny [D.E. 44-2]. The total for investigating Defendants is $37,605.08. *Id.* [D.E. 44-2 at 28]. Because the statute states that the costs of the action are recoverable, Sprint is entitled to the full $37,605.08 sought for investigating Defendants. *See* 15 U.S.C. § 1117(a). Therefore, the Court recommends that the District Court award Sprint $37,605.08 for its costs in bringing this action.

### ATTORNEYS' FEES AND COSTS

### Eligibility

"To recover attorneys' fees, the prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 490 (5th Cir. 2004) (internal quotations omitted). "An exceptional case involves acts that can

be called malicious, fraudulent, deliberate, or willful." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008) (internal quotations omitted). In the case at hand, Sprint has produced clear and convincing evidence of the exceptional nature of this case. *See Scott Fetzer Co.*, 381 F.3d at 490. Sprint's uncontested declaration evidences the fraudulent, deliberate, and willful conduct of Defendants. *See* Decl. of Clint Breithaupt [D.E. 44-1 at 1-5]. Therefore, the Court recommends that attorney's fees be awarded to Sprint.

## Attorneys' Fees and Cost Amount

"If the court concludes that the party is entitled to attorneys fees, it must then apply the lodestar calculation to determine the amount to be awarded." *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir. 1995). "Under this method, the court determines the 'reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multipl[ies] the two figures together to arrive at the 'lodestar.''" *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-752-D, 2011 WL 487754, at *2 (N.D. Tex. Feb. 11, 2011) (quoting *Wegner v. Standard Ins.* Co., 129 F.3d 814, 822 (5th Cir. 1997); citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); citing *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). Once the lodestar is calculated, the court then determines whether to increase or decrease that amount based on the factors[3] set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Arriaga v. Califco, LLC*, No. 3:12-CV-0094-D, 2013 WL 5928852, at *2 (N.D. Tex. Nov. 5, 2013).

---

[3] The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to properly perform the legal services; (4) the preclusion of other employment due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19 (overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

If counsel is located out of district, their "'home' rates should be considered as a starting point for calculating the lodestar amount" only when "abundant and uncontradicted evidence prove[s] the necessity . . . of turning to out-of-district counsel." *McClain v. Lufkin Indus.*, 649 F.3d 374, 382 (5th Cir. 2011). Otherwise, "'reasonable' hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The Fifth Circuit has consistently "interpreted rates 'prevailing in the community' to mean what it says." *Id.*

It is a fee applicant's burden to show "that its attorneys' hourly rate[s] [are] reasonable." *S & H Indus. v. Selander*, No. 3:11-CV-2988-M-BH, 2013 WL 6332993,*1 (N.D. Tex. Dec. 5, 2013) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). Generally, a court is provided with "copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individual's litigation skills generally." *Id.* (quoting *Neles–Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 985 (S.D. Tex. 1997)). Further, the fee applicant usually provides affidavits of other attorneys practicing in the same community to establish the prevailing market rate. *Id.* at *3 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

Here, Sprint does not present the resumes of its attorneys or affidavits of other practicing attorneys in the Northern District of Texas. *See McClain*, 649 F.3d at 382. However, Sprint does manage to produce a declaration by one of its attorneys that outlines the work completed. *See* Decl. of Stacey Sutton [D.E. 44-2 at 12-18]. The declaration provides the name, job title, years of experience, hours worked, hourly rates, total expense for each attorney, and a total sum of $38,057.50 in attorneys' fees. *Id.* [D.E. 44-2 at 14]. It also indicates that all of the attorneys are

10

located out of district. *Id.* [D.E. 44-2 at 13-14]. The declaration further presents three cases that suggest hourly rates of $300-$450 are reasonable in the Northern District of Texas. *Id.* [D.E. 44-2 at 15]. The Court accepts the declaration's hourly rates[4] of all of the attorneys and case clerks for the lodestar calculation. *Fralick*, 2011 WL 487754, at *2.

However, the Court does not accept the hourly rate of $180 for the two paralegals assigned to this case. *See Rolex Watch U.S.A., Inc. v. Mills*, No. 3:12-CV-00061-L, 2012 WL 5903782, at *6 (N.D. Tex. Nov. 26, 2012) (finding that a $195 hourly rate "exceed[ed] the average billing rate for paralegals in Texas"). In the Northern District of Texas, the hourly rate for a paralegal ranges between $60 to $125 an hour. *See id.* at *5-6 (awarding fees at $125 an hour for a paralegal); *Fralick*, 2011 WL 487754, at *1 n.3 (finding hourly rate of $100 reasonable for paralegal); *EsNtion Records, Inc. v. Triton TM, Inc.*, No. 3:07-CV-2027-L, 2010 WL 3446910, at *3 (N.D. Tex. Aug. 31, 2010) (accepting $125 per hour rate for paralegal). Further, no evidence has been presented to establish either a paralegal's work experience or the worked performed on this case. *See Rolex*, 2012 WL 5903782, at *6. Finally, Sprint has not established that it was necessary to rely on out-of-district counsel and, by extension, their paralegals. *See McClain*, 649 F.3d at 382. Therefore, the Court sets the paralegal hourly rate at $125 for the lodestar calculation. *See Fralick*, 2011 WL 487754, at *2.

Next, the Court considers the reasonable number of hours spent by the attorneys in preparation and litigation of the case. *Id.* Sprint's attorneys claim to have accumulated 129.70 hours in relation to the case at hand. Decl. of Stacey Sutton [D.E. 44-2 at 14]. These hours are divided

---

[4] Other courts have accepted a fee applicant's hourly rate as reasonable when the opposing party did not object to the rate. *S & H Indus.*, 2013 WL 6332993, at *3 n.4 (citing *Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995)).

11

among the attorneys, paralegals, and clerks assigned to this case. *Id.* [D.E. 44-2 at 13-14]. The Court finds this to be a reasonable number of hours for a case of this nature.

The Court calculates the lodestar as follows: 1.9 hours at a rate of $425.00/hour for Mr. Baldinger ($807.50); 33.9 hours at a rate of $390.00/hour for Ms. Sutton ($13,221.00); 59.5 hours at a rate of $310.00/hour for Ms. Yasko ($18,445.00); 8.2 hours at a rate of $300.00/hour for Mr. Dunson ($2,460.00); 8.9 hours at a rate of $125.00/hour for Ms. Demaline ($1,112.50); 6.9 hours at a rate of $125.00/hour for Ms. Moore ($862.50); 2 hours at a rate of $35.00/hour for Ms. Foster ($70.00); 5.4 hours at a rate of $25.00/hour for Ms. Scranton ($135.00); and 3 hours at a rate of $25.00/hour for Cameron Prior ($75.00). After multiplying the lodestar hours by the hourly rates, the Court arrives at the total of $37,188.50 for attorneys' fees. The Court finds this to be a reasonable amount, and it is unnecessary to make an upward or downward variance based on any of the *Johnson* factors. *See Arriaga*, 2013 WL 5928852, at *2. Sprint also requests $2,908.49 for copying, professional services, express mail, travel, lodging, and meals. *See* Decl. of Stacey Sutton [D.E. 44-2 at 25]. The Court finds this amount to be reasonable as well. Therefore, the Court recommends that $40,096.99 in attorneys' fees and costs be awarded to Sprint.

## RECOMMENDATION

For the reasons stated above, the District Court should **GRANT in part** Plaintiffs' Motion for Default Final Judgment and Permanent Injunction and Awarding Damages Against Defendants Joseph Taylor III, Julie M. Roberts, Tony E. Mims, and Bernard McGhee [D.E. 43]. Sprint should be awarded $332,207.37 in damages, $37,605.08 in costs for bringing this action, and $40,096.99 in attorneys' fees and costs. Finally, this Court recommends that the District Court include a permanent injunction as a part of its final judgment.

**SO RECOMMENDED**, this ___ day of January, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).